UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

GWENDOLYN J. MOORE, )
    Plaintiff; )
)
-vs.- ) No. CV-97-P-0720-S
)
TACO BELL CORP., )
    Defendant. )

## OPINION

The defendant's Motion for Summary Judgment was considered at the June 26, 1998 motion docket. For the reasons expressed below, this motion is due to be granted.

### Facts

The plaintiff began working as a shift manager for defendant Taco Bell Corporation in January 1994. She was transferred to a different location in June 1994 and then to the Bessemer location in January 1995. Charles Thomas was the general manager from December 1995 through September 1996.

The plaintiff alleges that from the middle of 1996 until September 18, 1996, Thomas sexually harassed her. On three occasions, Thomas walked passed the plaintiff when she was working on the food preparation line and allegedly rubbed his penis against her back. On two occasions, Thomas allegedly said to the plaintiff, "I bet your husband can't do it like me, can he?" The plaintiff claims that Thomas tried to give her neck and shoulder massages and to unfasten her bra on one occasion in September 1996. The plaintiff also alleges that Thomas inquired about her sexual relations with her husband, made inappropriate tongue gestures, and claimed that he was

Clarence Thomas's brother, a pervert, and proud of it.

Taco Bell maintains a harassment policy printed in its orientation handbook. The policy directs employees to report suspected sexual harassment to the immediate supervisor, or, if this would produce an uncomfortable situation, to the Market Manager, Zone Employee Relations Manager, or Zone Vice President. Each restaurant has a poster with the names and telephone numbers of these managers. Taco Bell also maintains a toll-free human resources number for reporting complaints.

On September 13, 1996, the plaintiff called Margaret Hagstrom, her Market Manager, to complain about Thomas. Although the plaintiff told Hagstrom that Thomas was "disrespecting [her] as a woman," the plaintiff did not provide details of the alleged sexual harassment or mention the word harassment. The plaintiff complained to Hagstrom that Thomas did not tell employees they were doing a good job, that Thomas did not clean properly on his shift, that she had to close the store too many nights, and that she felt that her potential for advancement had been hampered by her brother's behavior when he was a Taco Bell employee. Hagstrom allegedly praised Thomas's work, told the plaintiff she was being unprofessional, and began to ask about problems with the plaintiff's work performance. In an affidavit given to the EEOC, the plaintiff stated that she was not able to tell Hagstrom about the sexual harassment because Hagstrom was too busy putting Thomas on a pedestal. Although Hagstrom offered to transfer the plaintiff to another store, the plaintiff declined because of the location. Hagstrom recommended a meeting to deal with the problems, and plaintiff agreed. Subsequently, the plaintiff called Thomas and told him to tell Hagstrom that she no longer wanted to meet.

On September 15 or 16, the plaintiff called the toll-free hotline and told a representative

2

that she felt she was being mistreated because of problems that Thomas and Hagstrom had with her brother. The plaintiff told the representative that sexual harassment was going on in the Bessemer store but did not indicate who was being sexually harassed or what kind of behavior was involved. The plaintiff declined to make a sexual harassment complaint or to be contacted by a company representative. The hotline representative's synopsis of the plaintiff's complaint indicated that the plaintiff said she would bring sexual harassment charges against someone in the store if nothing was done to help her. This report was sent to Hagstrom on September 18, 1996 by electronic mail.

On September 17, 1996, the plaintiff filed a charge of sexual harassment with the EEOC. The next day, the plaintiff resigned her employment. When Hagstrom received the e-mail from the hotline representative, she referred the matter to Taco Bell's Human Resources department and asked them to send someone to investigate the charges. On October 8, 1996, Hagstrom and a Human Resources employee conducted an investigation at the Bessemer store. Because they determined that Thomas had engaged in misconduct, Taco Bell terminated Thomas that day.

The plaintiff filed her complaint on March 21, 1997, alleging claims of hostile environment sexual harassment and retaliatory discharge under Title VII, and invasion of privacy, outrage, battery, and negligent supervision/retention.

## Analysis

1. Hostile Environment

The Supreme Court recently articulated the standard for determining an employer's vicarious liability for hostile environment sexual harassment by a supervisor. If a plaintiff has

established an actionable hostile work environment, the following applies:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher v. City of Boca Raton*, 118 S. Ct. 2275, 2293 (1998). This affirmative defense is available to Taco Bell because it did not take a tangible employment action. The plaintiff resigned her employment; no official or company act changed her employment status. *See Burlington Industries, Inc. v. Ellerth*, 118 S. Ct. 2257, 2268-69 (1998).

Taco Bell is entitled to summary judgment if it can prove that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior and that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Taco Bell. Although "proof that an employer had promulgated an antiharassment policy with a complaint procedure is not necessary in every instance as a matter of law," *Faragher*, 118 S. Ct. at 2293, Taco Bell did and still does have a harassment policy with a complaint procedure. Taco Bell also has posters with names and telephone numbers of managers who will respond to complaints. Additionally, Taco Bell took corrective action after the plaintiff called the abuse line and first mentioned sexual harassment. Taco Bell promptly terminated Thomas after investigating the plaintiff's charges about the particular location. Taco Bell has met its burden of proving that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior.

Taco Bell must also prove that the plaintiff unreasonably failed to take advantage of its complaint procedure. *See Faragher*, 118 S. Ct. at 2293. The plaintiff contends that she did take

4

advantage of Taco Bell's policy and complaint procedure by calling Hagstrom and by subsequently calling the abuse line. In addition to what the plaintiff did do, however, this court must consider what the plaintiff did not do. During the phone call to Hagstrom, the plaintiff did not indicate that Thomas's "disrespecting" may have amounted to sexual harassment. Even when asked what she meant, the plaintiff said nothing to alert Hagstrom that Thomas's behavior was sexually inappropriate. Additionally, the plaintiff only hinted at possible sexual harassment during the hotline phone call; she did not report names or incidents. By not revealing the details of the alleged sexual harassment, the plaintiff unreasonably failed to take advantage of Taco Bell's corrective and preventive mechanisms. *See, e.g., Marsicano v. American Society of Safety Engineers*, 1998 WL 603128, at *7 (N.D. Ill. Sept. 4, 1998).

The degree to which the plaintiff engaged Taco Bell's complaint procedure is also relevant. *See Marsicano*, 1998 WL 603128, at *8 ("Thus, having instigated the complaint, Marsicano cannot be said to have pursued it in any meaningful fashion."). The plaintiff declined Hagstrom's offer for transfer and then changed her mind about meeting with Hagstrom and Thomas to resolve issues. Additionally, when the hotline representative asked the plaintiff if she would like to make a sexual harassment complaint, the plaintiff declined. The plaintiff also said she did not want to be contacted by a company representative. When the plaintiff resigned her employment two or three days after the abuse line call, arguably the only complaint sufficient to put Taco Bell on notice of possible harassment, the plaintiff preempted the preventive and corrective opportunities provided by Taco Bell. Because she did not permit Taco Bell's corrective machinery to take effect while she remained an employee, the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by her employer.

5

Because Taco Bell can meet its burden under *Faragher* and *Burlington Industries*, summary judgment is due to be granted as to the hostile environment claim.

2. Retaliatory Discharge

To establish a prima facie case of retaliation under Title VII, the plaintiff must prove three elements: 1) protected opposition to Title VII discrimination, 2) disadvantage by an employer's action taken at the same time as or after the opposition, and 3) a causal connection between the protected activity and the adverse employment action. *See Morgan v. City of Jasper*, 959 F.2d 1542, 1547 (11th Cir. 1992). This court does not need to determine whether the plaintiff's complaints constituted protected activity because this court finds no evidence that Taco Bell took any adverse employment action against the plaintiff. The plaintiff resigned her employment on September 18, 1996; she was not terminated.

To the extent that the plaintiff asserts that she was constructively discharged, that claim cannot establish adverse employment action because the plaintiff did not allow sufficient time for Taco Bell to correct the situation. *See Kilgore v. Thompson & Brock Management, Inc.*, 93 F.3d 752, 754 (11th Cir. 1996). The plaintiff resigned two or three days after she first mentioned sexual harassment during the hotline call on September 15 or 16. Although the plaintiff asserts that Taco Bell should have known about and corrected the alleged harassment based on complaints made by another employee and on the plaintiff's conversation with Hagstrom, the plaintiff did not give Taco Bell sufficient time to respond to any of her complaints, whether or not they alerted Taco Bell to the alleged harassment. Because Taco Bell did not constructively discharge the plaintiff, the plaintiff cannot prove that an adverse employment action occurred. Taco Bell's

motion for summary judgment as to the plaintiff's retaliation claim is therefore due to be granted.

### 3. Negligent Supervision/Retention

To establish negligent supervision, a plaintiff must offer proof that the employer knew of the employee's alleged incompetence or would have discovered it if the employer had exercised proper diligence and care. *See Mardis v. Robbins Tire & Rubber Co.*, 669 So. 2d 885, 889 (Ala. 1995). The proof can be specific acts of incompetency brought to the attention of the employer or acts of such frequency, character, and nature that the employer must have known about them. *See id.* Although the plaintiff in this case argues that Taco Bell knew or should have known of Thomas's sexual harassment based on a co-employee's complaint, the evidence establishes that the complaint focused on scheduling and on Thomas's bad language, and not on alleged sexual harassment. Although Taco Bell was aware of Thomas's cursing and had counseled him about it, nothing in the record indicates that Taco Bell knew or should have known about Thomas's alleged sexual harassment. The plaintiff has failed to offer proof that Taco Bell knew or should have known of the alleged sexual harassment before September 15 or 16, 1996.

To establish negligent retention, a plaintiff must show that the employer breached its duty to avoid retaining employees whom it knows or should know are ill-suited to deal with customers or others. *See Brown v. Vanity Fair Mills, Inc.*, 277 So. 2d 893, 894 (Ala. 1973). Because the evidence does not establish that Taco Bell knew or should have known of Thomas's alleged sexual harassment, the plaintiff's claim for negligent retention must fail. Additionally, the court notes that when Taco Bell did have knowledge of the alleged sexual misconduct, it promptly terminated Thomas. Taco Bell's motion for summary judgment as to the negligent supervision and retention

claims is therefore due to be granted.

4. State Law Tort Claims

Under Alabama law, an employer can be liable for the intentional torts of an employee if they were committed in the line and scope of employment, if they furthered the employer's business, or if the employer participated in, authorized, or ratified the wrongful acts. *See Kilgore*, 93 F.3d at 755; *Joyner v. AAA Cooper Transp.*, 477 So. 2d 364, 365 (Ala. 1985). To be outside the line and scope of employment, the acts must be motivated by wholly personal reasons. *See Doe v. Swift*, 570 So. 2d 1209, 1211 (Ala. 1990). The sexual misconduct that the plaintiff alleges was personal and not within the line and scope of Thomas's employment; it did not further Taco Bell's business. The alleged comments and touchings served no business purpose and were impelled by only personal motives. Taco Bell therefore cannot be vicariously liable for invasion of privacy, outrage, or battery based on the alleged sexual harassment.

Additionally, this court finds no evidence that Taco Bell authorized, ratified, or participated in the alleged misconduct. Taco Bell did not have actual knowledge of Thomas's conduct until it investigated the plaintiff's allegations in October 1996. When Taco Bell acquired actual knowledge, it promptly terminated Thomas, negating any argument that it failed to take adequate steps to remedy the problem. Because the evidence demonstrates that Taco Bell did not authorize, ratify, or participate in the alleged misconduct, Taco Bell cannot be directly liable for any state law torts committed by Thomas.

For these reasons, Taco Bell's motion for summary judgment as to the plaintiff's state law claims is due to be granted.

8